[Civ. No. 10497. First Appellate District, Division Two.—June 2, 1937.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association) et al., Appellants, v. JOSEPH FEIG et al., Respondents.

Leo R. Friedman, James J. Harrington and Keyes & Erskine for Appellant.

Reisner & Deming for Respondents.

SPENCE, J.—In an action previously brought, defendant Feig had recovered judgment against plaintiffs herein. (*Feig* v. *Bank of America etc. Assn.,* 5 Cal. (2d) 266 [54 Pac. (2d) 3].) After that judgment had become final, plaintiffs brought this action. Their amended complaint, upon which this action went to trial, was entitled "Amended complaint by trustee to secure settlement of his accounts". Defendants interposed several defenses, including the defense of *res judicata.* The trial court found in favor of defendants upon said defenses and entered judgment accordingly. Plaintiffs appeal from said judgment.

Appellants' contentions are (1) "that a judgment purporting to adjudicate a matter not within the issues or litigated is not *res judicata* with respect to such matter in

a subsequent action"; (2) that "the issue in the first action was confined to the existence of the trust and this was the only question litigated"; and (3) that "the first judgment purporting to adjudge that the bank should pay interest at the legal rate and should pay damages for withholding the real property is not *res judicata* in this proceeding and does not preclude the bank from securing a decree in this action that it is chargeable only with the interest and rents actually received by it" less deductions for its expenditures.

The first above-mentioned contention of appellants consists of an abstract statement of law and the correctness thereof may be conceded for the purpose of this discussion. (*Bray* v. *Payne*, 210 Cal. 465 [292 Pac. 478]; *Callnon* v. *Callnon*, 7 Cal. App. (2d) 676 [46 Pac. (2d) 988]; see, also, *Baar* v. *Smith*, 201 Cal. 87 [255 Pac. 827].) The second above-mentioned contention is the vital one in the present case for it constitutes the premise upon which the third contention is based. If said second contention is found to be without merit, then the third contention must necessarily fall. It therefore becomes necessary to examine the issues in the first action in order to determine whether the issue there "was confined to the existence of the trust".

The facts out of which this litigation arose are fully set forth in the opinions on the two appeals in the first action. (*Feig* v. *Bank of Italy etc. Assn.*, 218 Cal. 54 [21 Pac. (2d) 421]; *Feig* v. *Bank of America etc. Assn., supra.*) The first trial of the first action was had upon the original pleadings. The original complaint in that action was in three counts which were described in *Feig* v. *Bank of Italy etc., Assn., supra*, as follows: The first count was for money had and received; the second count was for the recovery of a deposit; and the third count was in ejectment for the recovery of two pieces of real property. The judgment of nonsuit which had been "granted primarily on the theory that plaintiff had misconceived his remedy and should have alleged facts entitling him to equitable relief", was reversed with directions to permit the plaintiff therein to amend his complaint as indicated in the opinion. The court further indicated that plaintiff was entitled "upon amendment of the complaint, to receive such relief, either legal or equitable, as the evidence warrants".

An amended complaint was filed in the first action before the second trial. On the second appeal in said first action, the action was described as one brought "to impress a trust on certain real and personal property" and the judgment in favor of the plaintiff therein was affirmed. (*Feig* v. *Bank of America etc. Assn., supra.*) No effort was made to fully describe the pleadings and judgment in that opinion as there were but two points raised on the appeal. The first point was "that the plaintiff was not entitled to anything" and the second point was that in any event the trial court erred "in awarding him anything in excess of fifty per cent" of the property.

In the present case, the amended pleadings in the first action and the judgment entered upon the second trial thereof were attached to and made a part of the pleadings herein. Furthermore, the entire record upon the second trial of the first action was introduced in evidence. We may therefore look to these in order to determine whether "the issue in the first action was confined to the existence of the trust".

The amended complaint in the first action contained but one count. It alleged, among other things, the death of Mindell Feig and the appointment of the executors; the marriage of the plaintiff therein and Mindell Feig in 1889 and the accumulation of the real and personal property thereafter as a result of their efforts; the existence of an agreement that Mindell Feig should be the business head of the family and manage all properties acquired and the placing of the properties in her name pursuant to said agreement; the procuring of a divorce by Mindell Feig in 1890 without service of process and without the knowledge of plaintiff and plaintiff's living with Mindell Feig continuously in good faith believing himself to be her husband. The amended complaint further alleged that on or about the 1st day of August, 1929, defendants therein had taken possession of the real property and money referred to in said complaint and continued to hold the same and claim an interest therein and had refused to surrender said property to plaintiff upon demand; that the rental value of the real property was the sum of $78 per month during the period that defendants had withheld it and that plaintiff had been damaged in the sum of $78 per month since August 1, 1929, by reason of said withholding. The prayer of the complaint was for a decree quieting plain-

tiff's title to the real property and money; for a judgment in the sum of $8,666.45 "with interest thereon"; for the "amount of rental value of said real property from the 1st day of August, 1929, until the entry of judgment" in the action and for "such other and further relief" as to the court seemed just.

The answer to said amended complaint contained certain denials but admitted that defendants claimed an interest in the property as executors and affirmatively alleged that all of the property was the separate property of Mindell Feig at the time of her death and that she was the exclusive owner thereof. Defendants further denied that plaintiff had been damaged in the sum of $78 per month or any other sum by the withholding of the property. It was further alleged in said answer that plaintiff had no right, title or interest in the real or personal property.

The trial court in that action found all of the material allegations of plaintiff's amended complaint to be true except that it found that the rental value of the real property was $70 per month and that plaintiff had been damaged in that amount per month by reason of the withholding. It further found that plaintiff was the owner of all the real and personal property and that the defendants had no right, title or interest therein.

The judgment of the trial court in that action was as follows: (1) That plaintiff recover the sum of $8,666.45 with interest from August 1, 1929; (2) that plaintiff recover for the rental value "of the real property here involved from and after the 1st day of August, 1929, at the rate of $70 per month, or a total sum of $3570.00"; (3) that plaintiff Joseph Feig was the owner of all of the real property and entitled to possession thereof and that defendants had no right, title or interest therein; and (4) that defendants had no right, title or interest in or to "the sum of $8666.45 mentioned in the complaint" and had no right, title or interest in the rents, issues and profits of the real property.

We believe that it is apparent from what has been said that appellants' contention, that "the issue in the first action was confined to the existence of the trust and this was the only question litigated", is without merit. While the first action may be said to have been one in the nature of an action "to impress a trust" as stated in the opinion on the second

appeal (*Feig* v. *Bank of America etc. Assn.*, 5 Cal. (2d) 266, 269 [54 Pac. (2d) 3]), it is certain that the amended complaint, filed after the first appeal, raised other issues and that the prayer asked for both legal and equitable relief. In fact, the allegations and the prayer thereof show that the plaintiff therein was seeking all of the legal and equitable relief to which he claimed to be entitled under the facts alleged. In addition to the allegations made to support his prayer for equitable relief, plaintiff alleged a refusal upon the part of defendants to surrender the real and personal property on demand. The allegations of the amended complaint were sufficient to put in issue plaintiff's right to damages for the alleged wrongful withholding of the real property and were also sufficient to put in issue his right to interest for the alleged wrongful withholding of the money. (*Cook* v. *Western Trust etc. Bank*, 137 Cal. App. 436 [30 Pac. (2d) 1006].) The prayer of the amended complaint plainly asked for relief by way of a money judgment for such damages and for such interest. We therefore conclude that these issues were litigated in the first action, that the judgment in that action awarding plaintiff therein damages and interest was not ''a judgment purporting to adjudicate a matter not within the issues'' and that the plea of *res judicata* interposed by respondents in the present action was properly sustained by the trial court.

In conclusion, we may state that appellants strongly insist that ''the equities in the case are all in the bank's favor''; that it was in the position of a ''successor trustee''; that it was its duty under the circumstances to resist the claims made by respondent Feig and that it should only be held liable for the rents and interests which it actually received, less deductions for its expenditures. They cite and rely upon *Elizalde* v. *Elizalde*, 137 Cal. 634 [66 Pac. 369, 70 Pac. 861], but that case is not in point here. It is a sufficient answer to appellants' claims to point out that they should have been raised in the first action. It is a familiar maxim that ''equity will not deal with a case by piecemeal'' (10 Cal. Jur. 496), and it is a settled rule that it is ''the duty of a court of equity, when all parties to the controversy are before it, to adjust the rights of all and leave nothing open for further litigation''. (*Swan* v. *Talbot*, 152 Cal. 142, 147 [94 Pac. 238, 17 L. R. A. (N. S.) 1066]; *Spalding* v. *Spalding*,

75 Cal. App. 569, 584 [243 Pac. 445].) In the first action, the trial court followed the rule stated and entered a judgment which purported to settle all the issues raised and to settle all of the rights of the parties arising out of the subject-matter of the litigation. That judgment had become final before the commencement of this action. Appellants were seeking by this action to relitigate the issue of the amount owing to respondent Joseph Feig, but that could not be done as that issue had been fully litigated and determined in the first action.

The judgment is affirmed.

Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 2, 1937, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 29, 1937.